# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0373-24

IN THE MATTER OF THE
APPLICATION OF THE STATE
OF NEW JERSEY FOR
DISPOSITION OF WEAPONS
BELONGING TO J.Z.

_____

Argued June 1, 2026 – Decided July 1, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Family Part, Bergen County, Docket No. FO-02-0051-24.

Robert B. Bell argued the cause for appellant J.Z. (Evan F. Nappen Attorney at Law PC, attorneys; Robert B. Bell, of counsel and on the brief).

Michael R. Philips, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Mark Musella, Bergen County Prosecutor, attorney; Michael R. Philips, of counsel and on the brief).

PER CURIAM

Defendant J.Z. appeals from an August 21, 2024 Law Division order granting the State's motion for forfeiture of his firearms, revoking his firearms

purchaser identification card ("FPIC") and permits, and permanently disqualifying him from possessing firearms pursuant to N.J.S.A. 2C:58-3(c)(3) and (5).[1] Defendant also contends N.J.S.A. 2C:58-3(c)(5) is unconstitutional on its face and as applied, and that there was insufficient evidence to support the court's determinations. We affirm.

I.

The following facts are not in dispute. Defendant is a divorced father of two, a United States Navy veteran, and former police officer with a municipal police department. In February 2022, defendant's former spouse L.Z. filed a domestic violence complaint against him and the court entered a temporary restraining order ("TRO") pursuant to the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35, following a hearing.

In support of the TRO complaint, L.Z. described a lengthy pattern of physically abusive, threatening, and destructive behavior by defendant over a one-to-two year period.

---

[1] We refer to defendant by initials to protect the confidentiality of the record related to parenting time determinations and the identity of the victim of domestic violence referenced in this appeal under Rules 1:38-3(d)(3) and (10).

A-0373-24

Following entry of the TRO, police officers responded to the parties' residence to serve defendant with the order. Prior to responding, officers learned from a records check that defendant possessed a firearms license. Officers served defendant with the TRO without incident and proceeded to search the parties' home for weapons.

As a result of the search, officers seized a revolver from a lockbox in the basement, defendant's FPIC, an empty rifle case that defendant stated corresponded to a rifle located at a hunting cabin in New York with an "unknown address," which he later reported had "recently burned down unexpectedly last week," and multiple rounds of ammunition, including .22 caliber, .223 caliber, .40 caliber, .45 caliber, 9mm, .357 caliber, and .38 special ammunition.[2]

In early March 2022, the court amended the TRO after L.Z. alleged defendant violated its terms by sending text messages, placing telephone calls, and attempting to communicate with her during video calls with the parties' children. Within months, L.Z. voluntarily dismissed the TRO and the parties agreed to a consent order for civil restraints. That order also required both

---

[2] According to the police report, officers also seized various items identified as property of the Borough of North Arlington, including police vehicle keys, a victim notification form book, a special complaint book, a gas mask, and a fully stocked medical jump bag.

A-0373-24

parties to complete the Alternatives to Domestic Violence ("ADV") program and provide proof of compliance.

On March 24, 2022, the State moved for forfeiture of defendant's firearms recovered from the search of his then-home and revocation of his firearms credentials under N.J.S.A. 2C:25-21(d).[3]  The hearing, however, did not commence until well over a year later, during which the State presented testimony from L.Z., police officers, and L.Z.'s divorce attorney, who defendant allegedly threatened.

The State also introduced photographs depicting damage to the parties' former marital home, injuries allegedly sustained by L.Z., audio recordings of conversations between the parties, police reports, and portions of defendant's medical reports from the Veterans Administration ("VA").

L.Z. testified regarding defendant's history of threats, physical assaults, and destruction of property, which she described as conduct she believed endangered her safety and that of their children.  Prior to L.Z.'s filing for divorce, she testified defendant physically assaulted her shortly after the birth

---

[3] Under N.J.S.A. 2C:25-21(d)(1)(b), if a law enforcement officer has probable cause to believe that an act of domestic violence has occurred, then they have the authority "upon observing or learning that a weapon is present on the premises, seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury."

A-0373-24

of their last child. L.Z. described that when she attempted to walk past defendant, he threw her to the ground, causing her to strike her head. After this incident, L.Z. filed for divorce and sought a TRO. She further testified defendant failed to provide proof of compliance with therapy and ADV programming and continued to communicate with and harass her despite the order for civil restraints. The State moved to admit, without objection, photographs depicting, among other things, damaged furniture, holes in walls, damaged doors, blood on a countertop, and injuries allegedly sustained by L.Z.

L.Z.'s divorce attorney testified that at one point during the matrimonial matter, defendant told him, "you know I was going to have you killed," which he interpreted as a threat because defendant had firearms.

Defendant's medical records from the V.A. were moved into evidence by the State and admitted in evidence, without objection. The records included defendant's complaints of irritability, suspicious thinking, difficulty sleeping, and post-traumatic stress disorder ("PTSD")-related flashbacks stemming from his military service. The records also included documented diagnoses of anxiety, adjustment disorder, attention-deficit/hyperactivity disorder ("ADHD"), PTSD, and bipolar disorder, for which he was prescribed various medications.

A-0373-24

Defendant also testified. He denied engaging in domestic violence or presenting a danger to the public and generally disputed L.Z.'s allegations. Although defendant admitted to causing some property damage at the former marital home, he characterized any statements he made as expressions of anger during a difficult period in his life.

Prior to the conclusion of the forfeiture proceeding, the United States Supreme Court issued a ruling in United States v. Rahimi, 602 U.S. 680 (2024), which upheld the government's ability to temporarily disarm an individual believed to pose a credible threat to the physical safety of another, consistent with the Second Amendment and 18 U.S.C. § 922(g)(8). The Law Division judge granted defendant and the State additional time to file supplemental briefings to address whether the Supreme Court's holding in Rahimi had any bearing on defendant's matter.

Following receipt of the supplemental briefing, the court issued a thorough and well-reasoned oral decision granting the State's forfeiture application. The court first noted that the voluntary dismissal of the TRO "does not mandate the automatic return of any weapons seized by law enforcement officers." The court added "[t]he State retains the right to seek forfeiture of any seized weapons provided it can show defendant is afflicted by any legal

disabilities under N.J.S.A. 2C:58-3C." Relying on audio recordings and photographic evidence, the court recounted the allegations of harassing conduct defendant perpetrated upon L.Z., including threatening "to break [L.Z.'s] skull," texting and calling her incessantly, "yelling at her and calling her degrading names," and threatening to go after her professional license, and those of her mother and sister. The court found L.Z. to be a credible witness, describing her testimony as "accurate, supported by the documentary evidence," and "reasonable." The court observed L.Z. was "visibly upset showing true emotions" while testifying and concluded that her fear of defendant possessing firearms was genuine. By contrast, the court found defendant's testimony less credible, noting, among other things, that he displayed "aggression and combativeness with the [c]ourt, as well as, the [p]rosecutor in this matter" during trial.

The court further concluded that forfeiture was warranted under both N.J.S.A. 2C:58-3(c)(3) and (5) based on defendant's "terroristic threats against his wife, against the police . . . and against [L.Z.]'s divorce lawyer," together with his "harassing and physical and destructive behavior." The court reasoned that defendant's conduct demonstrated that he lacked the "essential character of temperament necessary to be entrusted with a firearm."

A-0373-24

The court rejected defendant's constitutional challenges under the seminal case <u>New York State Rifle & Pistol Ass'n v. Bruen</u>, 597 U.S. 1 (2022), and <u>Rahimi</u>, concluding that defendant posed a credible threat to the physical safety of others and that forfeiture was appropriate.[4]

Following entry of the order, defendant's weapons were forfeited, his FPIC was revoked, and he was otherwise disqualified from purchasing or possessing firearms pursuant to N.J.S.A. 2C:58-3(c)(3) and (5).

Defendant appealed, asserting the following points for our consideration.

> POINT I
>
> THE COURT BELOW ERRED IN FINDING [DEFENDANT]'S ALLEGED CONDITIONS RENDERED HIM SUBJECT TO N.J.S.A. 2C:58-3(c)(3).
>
> POINT II
>
> THE COURT BELOW ERRED IN SPECULATING ABOUT [DEFENDANT]'S MENTAL HEALTH.
>
> POINT III
>
> THE COURT BELOW ABUSED ITS DISCRETION IN DIAGNOSING [DEFENDANT].

---

[4] Both <u>Bruen</u> and <u>Rahimi</u> will be discussed in greater in this opinion, <u>infra</u>.

A-0373-24

POINT IV

THE COURT BELOW ERRED BECAUSE THE [DEFENDANT] DID NOT ENGAGE IN REPETITIVE MISCONDUCT.

POINT V

EVIDENCE OF MENTAL HEALTH CONDITIONS IS NOT RELEVANT UNDER N.J.S.A. 2C:58-3(c)(5).

POINT VI

THERE IS NO HISTORICAL ANALOGUE FOR N.J.S.A. 2C:58-3(c)(5).

POINT VII

N.J.S.A. 2C:58-3(c)(5) SUFFERS FROM THE SAME DEFECTS NEW YORK'S "GOOD CAUSE" PROVISION SUFFERED FROM IN BRUEN.

POINT VIII

THE COURT BELOW ERRED IN INTERPRETING RAHIMI.

POINT IX

N.J.S.A. 2C:58-3(c)(5) IS UNCONSTITUTIONAL PER RAHIMI.

POINT X

[DEFENDANT] IS PERMANENTLY DISARMED IN VIOLATION OF THE SECOND AMENDMENT.

<u>POINT XI</u>

N.J.S.A.2C:58-3(c)(5) IS UNCONSTITUTIONALLY VAGUE.

<u>POINT XII</u>

N.J.S.A. 2C:58-3(c)(5) IS UNCONSTITUTIONALLY OVERBROAD.

<u>POINT XIII</u>

N.J.S.A. 2C:58-3(c)(5) VIOLATES DUE PROCESS NOTICE.

<u>POINT XIV</u>

THE "CHARACTER OF TEMPERAMENT" CLAUSE IS NONSENSICAL AND BASED ON A TYPOGRAPHICAL ERROR IN <u>BRUEN</u>.

<u>POINT XV</u>

THE TYPOGRAPHICAL ERROR SUGGESTS THE STATE IS DEFYING THE UNITED STATES SUPREME COURT.

II.

"Our review of a forfeiture of firearms and FPIC is deferential," <u>Matter of M.U.'s Application for a Handgun Purchase Permit</u>, 475 N.J. Super. 148, 199 (App. Div. 2023), because "a judicial declaration that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis." <u>In re Forfeiture of Pers. Weapons and Firearms Identification Card</u>

A-0373-24

Belonging to F.M., 225 N.J. 487, 505 (2016) (quoting State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004)).

"[W]e give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." M.U., 475 N.J. Super. at 171 (alteration in original) (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015)). "Heightened deference should be given to the trial court's assessment of witness credibility because the court was able to observe the witnesses as they testified." Ibid. Accordingly, we do not disturb the trial court's factual findings and legal conclusions "unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Griepenburg, 220 N.J. at 254); see also In re Return of Weapons to J.W.D., 149 N.J. 108, 116 (1997) ("Ordinarily, an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence").

A judicial determination concerning the grant, renewal, and revocation of an FPIC is governed by N.J.S.A. 2C:58-3(f). Under N.J.S.A. 2C:58-3(f), an FPIC "shall be void if the holder becomes subject to any of the disabilities set forth in N.J.S.A. 2C:58-3(c)." Further, "[a]ny [FPIC] may be revoked by the

11

Superior Court of the county wherein the card was issued, after hearing upon notice, upon a finding that the holder thereof no longer qualifies for the issuance of the permit." N.J.S.A. 2C:58-3(f). "The State must prove, 'by a preponderance of the evidence, that forfeiture is legally warranted.'" M.U., 475 N.J. Super. at 197 (quoting F.M., 225 N.J. at 508).

A.

Before us, defendant primarily contends the court improperly relied on speculative and unsupported evidence regarding his alleged mental health condition to conclude he was disqualified to possess firearms under N.J.S.A. 2C:58-3(c)(3) and (5). He further argues that subsection (c)(3), as amended in 2022, applies only to "physical defect[s] or disease[s]" and "substance use disorder[s]," and no longer encompasses mental health conditions. He further contends the court improperly diagnosed him with bipolar disorder and ADHD despite the absence of expert testimony, while also disregarding a psychologist's evaluation concluding he suffered only from an "adjustment disorder with mixed anxiety and depressed mood" and "poses no risk to [him]self or others." Defendant also argues the court abused its discretion by concluding he engaged in the type of "repetitive misconduct" contemplated by M.U., 475 N.J. Super. at

12

148, asserting that his alleged conduct arose only during the breakdown of his marriage and had abated by the time of trial.

Defendant also contends the Legislature's addition of the phrase "character of temperament" in the 2022 amendment was derived from a typographical error in Bruen, which quoted Connecticut case law using the phrase "essential character of [sic] temperament," whereas the original cases referred to "character of temperament." According to defendant, the Legislature copied this purported drafting error into subsection (c)(5), rendering the phrase "character of temperament" "unclear at best, and nonsensical at worst."

The court rejected defendant's arguments and found the State established by a preponderance of the evidence that defendant was disqualified under both N.J.S.A. 2C:58-3(c)(3) and (5). The court further substantially relied on the State's witnesses' testimony and evidence of defendant's destructive, assaultive, and harassing conduct, photographs documenting damage to the residence and injuries sustained by L.Z., defendant's admitted mental-health history and VA records, and his failure to comply with court-ordered counseling and ADV programming. The court concluded these circumstances "clearly demonstrate [defendant] does not possess the essential character of temperament necessary to be entrusted with a weapon under [(c)(5)]."

13

Pertinent to this appeal are subsections N.J.S.A. 2C:58-3(c)(3) and (5). Under N.J.S.A. 2C:58-3(c)(3), a person is disqualified from obtaining or retaining firearms credentials where the individual "suffers from a physical defect or disease which would make it unsafe for that person to handle firearms." Our Supreme Court has held that "disease" in this context includes mental health conditions that render a person unsafe to handle firearms. See F.M., 225 N.J. at 513; see also District of Columbia v. Heller, 554 U.S. 570, 626-27 (2008) (recognizing the constitutionality of prohibitions on possession of firearms by the mentally ill). More particularly, F.M. provides that:

> N.J.S.A. 2C:58-3(c)(5) is meant to address "individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest." [In re Osworth, 365 N.J. Super. 72, 79 (App. Div. 2003)]. . . . N.J.S.A. 2C:58-3(c)(5) was not designed to disqualify only an individual who possesses a diagnosable disorder.
>
> [225 N.J. at 513.]

Under N.J.S.A. 2C:58-3(c)(5), a person is disqualified from obtaining or retaining firearms credentials where issuance or possession of a firearm "would not be in the interest of the public health, safety or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm." The provision has consistently been interpreted

14

broadly to permit forfeiture where the record demonstrates an individual poses a danger to others or lacks the temperament necessary to safely possess firearms. M.U., 475 N.J. at 179-80; F.M., 225 N.J. at 507-08; Osworth, 365 N.J. Super. at 79.

Guided by these statutory provisions and governing case law, we reject defendant's contentions that the court erred in its reasoning, findings, and conclusion. As the court noted, "[t]he State retains the right to seek forfeiture of any seized weapons provided it can show defendant is afflicted by any legal disabilities under N.J.S.A. 2C:58-3(c)." In so doing, the court correctly articulated the standard for weapons forfeiture matters by framing the matter as fact-sensitive with a holistic assessment of defendant's background and interactions with other parties.

In this vein, the court properly considered the evidence contained in the record, including audio recordings of an incident involving defendant and his then-spouse, photographs of L.Z. and their former home. The court also appropriately considered defendant's threatening conduct, including the recording of defendant threatening "to break [L.Z.]'s skull" and expressing that "he wanted her to die a horrible death." The court also properly assessed the credibility of the witnesses, noting in particular, L.Z.'s demeanor, and finding

her credible and believable when she testified about her fear of defendant possessing firearms. We have no quarrel with the court's review of the testimony and evidence presented, its credibility determinations and conclusion the State established defendant had a disqualifying disability under N.J.S.A. 2C:58-3(c)(5).

Additionally, we discern no error with the court's reliance on defendant's medical and mental health records, which were properly admitted in evidence. And, we reject defendant's assertion that the court improperly speculated about defendant's mental health conditions. We are satisfied that this argument is belied by the record, which includes multiple treatment notes contemporaneous to the timing of the State's application, detailing defendant's mental health complaints and concerns, evaluations, diagnosis of adjustment disorder, depression and anxiety, treatment recommendations, and progress notes. Importantly, however, the court did not base its decision solely on this evidence, but instead properly reviewed the record in its entirety and concluded that defendant's conduct, threats, and mental health history did not satisfy the "essential character of temperament" standard necessary to conclude defendant could safely be entrusted with a firearm under (c)(5).

16

Against this backdrop, we are hard-pressed to conclude the court abused its discretion. On the contrary, we are satisfied there is adequate, substantial evidence in this record to support the court's findings and conclusions. See J.W.D., 149 N.J. at 116-17.

B.

We now turn to briefly address defendant's constitutional arguments, including that N.J.S.A. 2C:58-3(c)(5) is vague, overbroad, and violates U.S. Supreme Court case law, the 2022 amendment's addition of the phrase "character of temperament" in subsection (c)(5) was based on a typographical error in Bruen, rendering the statutory language unclear and unenforceable, and the application of these provisions to him violates the Second Amendment, particularly in light of Bruen and Rahimi.

We previously determined N.J.S.A. 2C:58-3(c)(5) is not incongruous with the Court's holding in Bruen. See M.U., 475 N.J. Super. at 194 (upon performing a detailed Bruen analysis, concluding N.J.S.A. 2C:58-3(c)(5) is constitutional because "it is . . . well-rooted in the nation's history and tradition of firearm regulation that individuals whose armament poses a risk to 'public health, safety[,] or welfare,'" are "beyond the ambit of 'the people' protected by the Second Amendment"); see also In re Appeal of the Denial of R.W.T., 477 N.J.

17

Super. 443, 454 (App. Div. 2023) ("reject[ing] a facial challenge to the constitutionality of the 'public health, safety[,] or welfare' disqualification criterion").

We are similarly unpersuaded by defendant's assertion that a typographical error in the "character of temperament" language renders this subsection of the law constitutionally deficient. Defendant's argument is unavailing as we have held N.J.S.A. 2C:58-3(c)(5) to be constitutional and consistent with Rahimi. In ruling on the constitutionality of N.J.S.A. 2C:58-3(c)(5), we concluded that the historical record showed "legislatures traditionally imposed status-based restrictions" that were "not limited to individuals who demonstrated a propensity for violence" but "also applied to entire categories of people due to the perceived threat they posed to an orderly society." M.U., 475 N.J. Super. at 189. And, the Legislature's intent is readily ascertainable from the statute as a whole. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (requiring courts to read statutory language in context and give effect to legislative intent).

Rahimi did not create new law, but rather applied Bruen to 18 U.S.C. § 922(g)(8) and concluded that statute was "wholly consistent with the Nation's history and tradition of firearm regulation." Rahimi, 602 U.S. at 703

18

(Sotomayor, J., concurring). The Court reaffirmed Heller's observations that prohibitions on the possession of firearms by "felons and the mentally ill" is "presumptively lawful," Rahimi, 602 U.S. at 689, and concluded individuals subject to U.S.C. § 922(g)(8) with a present restraining order and who "represent[] a credible threat to the physical safety of an intimate partner" may be temporarily disarmed. Rahimi, 602 U.S. at 690.

Lastly, we are unpersuaded by defendant's contention that the court further erred by imposing a permanent forfeiture of defendant's firearms. Here, the court ordered J.Z.'s "firearms, weapons, ammunition, permit(s), and/or any other accessories . . . and any other weapon, ammunition or other firearm accessory, seized pursuant to [PDVA]" forfeited. Although the order properly forfeited defendant's firearms and revoked his firearms credentials, nothing in N.J.S.A. 2C:58-3(c)(3) or (5), or in the court's order itself, bars defendant from seeking vacatur in the future should these circumstances change and a proper application be made to the court.

To the extent that we have not addressed all of defendant's remaining arguments, it is because we conclude they are without sufficient merit to warrant discussion in writing. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division